UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MARICARMEN DE LA CRUZ, et al.,

   Plaintiffs,

   v.

YANITSIA IRIZARRY, WADDY MERCADO,

   Defendants.

Civil No. 12-1837 (JAF)

**OPINION AND ORDER**

In this case, a group of fathers and mothers, as well as their spouses and domestic partners, bring suit against Idalia Colón-Rondón, Secretary of Puerto Rico's Department of the Family; and Rosabelle Padín-Batista, Administrator of Puerto Rico's Child Support Administration.[1] (Docket No. 1.) Plaintiffs style their suit as a writ of mandamus and a purported class action. (Id. at 1-2.) Plaintiffs allege violations of the federal Family Support Act of 1988, Pub. L. No. 100-485, 102 Stat. 245 (as codified at 42 U.S.C. § 667); the Special Child Support Act of Puerto Rico, 8 L.P.R.A. §§ 501 et seq. (1988); and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Docket No. 1 at 5-6.) Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1),

---

[1] In their complaint, Plaintiffs originally named as defendants Yanitsia Irizarry ("Irizarry"), then-Secretary of the Department of the Family, as well as Waddy Mercado ("Mercado"), then-Administrator of Puerto Rico's Child Support Administration. (Docket No. 1.) Following an election in which political power changed hands from the New Progressive Party to the Popular Democratic Party, new officials were appointed heads of these agencies. (Docket No. 24.) As a result, the named defendants are now Idalia Colón-Rondón, current Secretary of the Department of the Family, and Rosabelle Padín-Batista, current Administrator of the Child Support Administration of Puerto Rico. (Id.) We granted Plaintiffs' motion to substitute these Defendants. (Docket Nos. 24, 27.) We note also that Defendants' motion to dismiss for lack of subject-matter jurisdiction was filed in October 2012. (Docket No. 10.) This was before the political change of power, while Irizarry and Mercado were still the named defendants. (Docket No. 10.) Because the Defendants' identities do not affect the legal issues in this motion, we refer simply to "Defendants."

Civil No. 12-1837 (JAF)                                                                                                              -2-

claiming that this court lacks subject-matter jurisdiction over Plaintiffs' claims.[2] (Docket No. 10.) Plaintiffs oppose. (Docket No. 11.) For the following reasons, we grant in part and deny in part Defendants' motion to dismiss.

## I.

## **Allegations**

Plaintiffs are a group of fathers and mothers, as well as their spouses and domestic partners, who are affected by the administration of child support in Puerto Rico. (Docket No. 1.) Plaintiffs argue that under 42 U.S.C. § 667, Puerto Rico's Department of the Family and the Child Support Administration are obligated to "review" their child support guidelines every four years. (Docket No. 1 at 5.) Plaintiffs allege that Defendants, as directors of these agencies, have failed to comply with this obligation. (Id.) Plaintiffs state that the last time these agencies reviewed their child support guidelines was on April 24, 2006.[3] (Id.) In particular, Plaintiffs allege that Defendants' failure to review the child support guidelines violates a federal requirement that each state determine appropriate child support award amounts to be paid by non-custodial parents. (Id. at 6.)

Plaintiffs allege that during the previous administration they made a request to Irizarry and Mercado, the former heads of the Department of the Family and Child Support Administration, to review the child support guidelines. (Id.) Plaintiffs state that Irizarry and

---

[2] Defendants' motion is titled "Motion To Show Cause And To Dismiss For Lack of Jurisdiction." (Docket No. 10.) Defendants characterize their motion as under Fed. R. 12(b)(1), not Fed. R. 12(b)(6). (Docket No. 10 at 2, 4.) The motion states that the court "does not have to delve into the merits of the case because plaintiffs have failed to demonstrate that the District Court has jurisdiction to grant the relief requested." (Docket No. 10 at 4.) In their treatment of Plaintiffs' equal protection clause claim, however, Defendants argue that Plaintiffs have failed to state a claim. (Docket No. 10 at 9-11.) As we discuss below, this portion of Defendants' motion is more properly treated as one under Rule 12(b)(6). See generally Wright & Miller, 5B Federal Practice and Procedure § 1350.
[3] Plaintiffs note that those guidelines then became effective on May 24, 2006. (Docket No. 1 at 5.)

Civil No. 12-1837 (JAF)                                                                                          -3-

Mercado initiated a review of the guidelines in 2012, but then suspended the review, and failed to complete the process before they left their positions. (Docket No. 1 at 6.)

Plaintiffs further allege that in the new administration, Colón-Rondón and Padín-Batista have needlessly delayed the review process of the 2006 guidelines. (Docket No. 52.) Plaintiffs attach a newspaper article, published on March 20, 2013, in EL VOCERO newspaper, in which Padín-Batista states that it may take more than a year to finish the review process.[4] (Docket No. 52-1, translation at Docket No. 55-1.) Padín-Batista also states that her administration will have to assess all of the studies performed by the previous administration, and possibly hold public hearings. (Docket No. 52-1, translation at Docket No. 55-1.)

Plaintiffs argue that the Department of the Family's failure to review the guidelines since 2006, in addition to violating § 667, deprives them of equal protection of the laws in violation of the Fourteenth Amendment. (Docket No. 1 at 6-7.) Plaintiffs argue that because other states have complied with the requirement to review their child support guidelines every four years, while Puerto Rico has not, they are deprived equal protection of the laws relative to citizens of other states. (Id. at 7.)

**I.**

**Rule 12 (b)(1) Motion to Dismiss Standard**

A defendant may move to dismiss an action against him under Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Federal courts are obligated to resolve questions pertaining to subject-matter

---

[4] Yamilet Millán Rodríguez, Para Largo Nuevas Tablas de ASUME, EL VOCERO, March 20, 2013, at 6. (See Translation at Docket No. 55-1.)

jurisdiction before addressing the merits of a case.  Acosta-Ramirez v. Banco Popular de Puerto Rico, ___ F.3d ___, No. 12-1887, at *8 (1st Cir. Apr. 3, 2013) (citing Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).  Moreover, it is "black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) (citations omitted).

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occupational Safety & Health Admin., 62 F.3d 3733 (1st Cir. 1995) (citing 5A Charles Wright & Arthur Miller, Federal Practice and Procedure § 1350, at 210 (1990); Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1945) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."). "It is not simply formalistic to decide the jurisdictional issue when the case would be dismissed in any event for failure to state a claim.  Different consequences flow from dismissals under 12(b)(1) and 12(b)(6): for example, dismissal under the former, not being on the merits, is without res judicata effect." Northeast Erectors, 62 F.3d at 39 (citing 2A James Moore, et al., Moore's Federal Practice 12.07, at 12-49 & n. 3 (1993)).

"When a defendant moves to dismiss for lack of federal subject matter jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citing Murphy v.

United States, 45 F.3d 520, 522 (1st Cir. 1995)). Subject-matter jurisdiction is properly invoked when a colorable claim "arising under" the Constitution or law of the United States is pled. 28 U.S.C. § 1331; Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006) (internal citation omitted). Usually, a claim arises under federal law if a federal cause of action emerges from the face of a well-pleaded complaint. See Viqueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1988) (internal citations omitted).

Rule 12(b)(1) provides a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001). A movant may base a challenge to the sufficiency of the plaintiff's assertion of subject matter jurisdiction solely on the pleadings. Id. at 363. In that case, we take the plaintiff's "jurisdictionally-significant facts as true" and "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id. at 363; see Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir. 2000). On a motion under 12(b)(1), we may review materials outside the pleadings to determine whether subject-matter jurisdiction exists. Gonzalez v. United States, 284 F.3d 281 (1st Cir. 2002) (citations omitted). When a defendant moves to dismiss under Rule 12(b)(1) because of failure to state a federal constitutional claim, dismissal is proper only if a court determines that the claim is "frivolous" or "so attenuated and unsubstantial as to be absolutely devoid of merit." Baker v. Carr, 82 S.Ct. 691, 702 (1962) (citations omitted). Such a determination must be "very plain" from the complaint. Id. (citations omitted).

### III.

### **Analysis**

Defendants argue that this court lacks jurisdiction to hear the merits of Plaintiffs' claim. (Docket No. 10.) Plaintiffs respond that this court should invoke its mandamus power under 28 U.S.C. § 1361. (Docket No. 11.) Alternatively, Plaintiffs argue that the Family Support Act of 1988, Pub. L. 100-485 (codified in scattered sections of the U.S. Code, including 42 U.S.C. §§ 652, 660, 667), confers jurisdiction on this court. (Docket No. 11 at 2.) For the reasons discussed below, we find there is no jurisdiction under either of these avenues.

This is not the end of our inquiry, however. Although neither party presented arguments under Ex Parte Young, 209 U.S. 123, 159-60 (1908), it appears that Plaintiffs' claim fits squarely within this jurisdictional doctrine. Plaintiffs seek an injunction from this court that would require Defendants to comply with § 667.[5] (Docket No. 1 at 10-11.) This appears to be well within the court's jurisdiction under Ex Parte Young. See, e.g., Quern v. Jordan, 440 U.S. 337 (1979) (a "federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury.") Because neither party has raised the issue, we will grant leave to the parties to brief the

---

[5] Plaintiffs write that they seek an injunction requiring Defendants to complete the review process in sixty days. (Docket No. 1 at 11.) At this stage of the case, we seek only to determine subject-matter jurisdiction and, thus, take no position on this specific request that Plaintiffs make.

question of whether jurisdiction exists under <u>Ex Parte Young</u>. First, though, we consider whether any of the Plaintiffs' other arguments for jurisdiction are availing.

We begin our analysis with the statute that Plaintiffs seek to enforce. 42 U.S.C. § 667 provides:

> Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts.

<u>Id.</u>

The word "plan" refers to a plan under the Temporary Assistance to Needy Families Program ("TANF"), administered by the United States Department of Health and Human Services ("HHS") pursuant to Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–619. <u>See</u> <u>Administracion del Sustento de Menores v. Dep't of Health & Human Serv.</u>, 588 F.3d 740, 742 (1st Cir. 2009). The TANF program provides block grants, also known as State Family Assistance Grants, to eligible states. <u>Id.</u> (citing 42 U.S.C. § 603(a)(1)). To be eligible for these block grants, states must operate child support enforcement programs— that is, programs designed to locate non-custodial parents, establish paternity, and obtain child and spousal support—in accordance with Title IV–D of the Social Security Act. <u>Id.</u> (citing 42 U.S.C. §§ 651– 669b; 42 U.S.C. § 602(a)(2)). Puerto Rico participates in the TANF program.[6] <u>Id.</u>

---

[6] Puerto Rico is treated as a state for purposes of the TANF program, 42 U.S.C. § 619(5), and Title IV–D of the Social Security Act, <u>id.</u> § 1301(a)(1).

Civil No. 12-1837 (JAF)                                                                                           -8-

Title IV–D imposes performance standards and reporting requirements on states as a condition of funding. Id. HHS enforces these standards and requirements. Id. As relevant here, HHS has promulgated a regulation reiterating the requirement that states review their child support guidelines every four years. 45 C.F.R. § 302.56. In Puerto Rico, the Administrator of the Child Support Administration is responsible for reviewing these guidelines every four years, pursuant to Puerto Rico's Special Child Support Act, 8 L.P.R.A. §§ 501 et seq., and the Uniform Administrative Procedures Act, 3 L.P.R.A. §§ 2101 et seq.

**A.    Mandamus**

Plaintiffs first argue that this court should exercise its mandamus jurisdiction over this case. (Docket No. 11.) The mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Defendants argue that there is no mandamus jurisdiction here, because the heads of Puerto Rico's Department of the Family and Child Support Administration are not federal officers or employees. (Docket No. 10.) We agree with Defendants.

The mandamus statute that Plaintiffs seek to invoke, 28 U.S.C. § 1361, states clearly that district courts have jurisdiction over "officer[s] or employee[s] of the United States or any agenc[ies] thereof." Plaintiffs do not even argue that Defendants are agencies or

officers of the United States; instead, Plaintiffs argue that because there is a federal interest at stake, this court should exercise subject-matter jurisdiction. (Docket No. 11 at 4-5.) This is plainly an insufficient basis for jurisdiction under 28 U.S.C. § 1361.

On page four of their opposition to Defendants' motion to dismiss, Plaintiffs write that "the district courts have original jurisdiction to compel an officer or employee of the local government or any agency thereof, to comply with a ministerial duty arising from a federal statute." (Docket No. 11 at 4.) Plaintiffs also state virtually the same thing in their complaint. (Docket No. 1 at 8.) As Defendants point out in their motion to dismiss, Plaintiffs' language misconstrues the mandamus statute. (Docket No. 11 at 4.) That statute grants jurisdiction over any officer or employee of the United States or any of its agencies. See 28 U.S.C. § 1361 (emphasis added). No mention is made in the statute of state or local employees or officers. Id.

Plaintiffs' plainly incorrect reading of the statute and of our mandamus power borders on the frivolous. It is well-established that "[f]ederal courts have no general power to compel action by state officials." Davis v. Lansing, 851 F.2d 72, 75 (2d Cir. 1988) (rejecting mandamus claim by state prisoner) (collecting cases); see also Robinson v. People of State of Ill., 752 F. Supp. 248, 249 (N.D. Ill. 1990) (finding that "no arguable legal basis exists" for state prisoner's mandamus request to federal court) (collecting cases).

Moreover, it is clear that "[m]andamus is regarded as an extraordinary writ reserved for special situations. Among its ordinary preconditions are that the agency or official have acted (or failed to act) in disregard of a clear legal duty and that there be no adequate

Civil No. 12-1837 (JAF)                                                        -10-

conventional means for review." <u>In re Request from United Kingdom</u>, 685 F.3d 1, 14 n.16 (1st Cir. 2012) (quoting <u>In re City of Fall River, Mass.</u>, 470 F.3d 30, 32 (1st Cir. 2006)). Defendants argue that Plaintiffs have not shown that no adequate conventional means for review exists, specifically in Puerto Rico's Commonwealth courts. (Docket No. 11 at 5.) We agree. Therefore, contrary to Plaintiffs' arguments, no jurisdiction lies under 28 U.S.C. § 1361.

**B.     Family Support Act of 1988**

Next, Plaintiffs argue that the statute itself, the federal Family Support Act of 1988, Pub. L. 100-485, confers jurisdiction on this court. (Docket No. 11 at 2.) Again, we disagree. Plaintiffs do not cite any case law in support of their position. They argue simply that "section 660 states that the district courts of the United States shall have jurisdiction to hear and determine any civil action certified by the Secretary of Health and Human Services under section 652(a)." (Docket No. 11 at 2.) Again, Plaintiffs are mistaken. § 660 states that:

> The district courts of the United States shall have jurisdiction, without regard to any amount in controversy, to hear and determine any civil action certified by the Secretary of Health and Human Services under section 652(a)(8) of this title. A civil action under this section may be brought in any judicial district in which the claim arose, the plaintiff resides, or the defendant resides.

Plaintiffs do not claim that they have received any such certification from the Secretary of Health. Thus, we have no jurisdiction under the statute. See <u>Hexamer v. Foreness</u>, 981 F.2d 821 (5th Cir. 1993) (finding no jurisdiction under § 660 unless the Secretary has provided certification.) Moreover, § 660 applies to civil actions under

Civil No. 12-1837 (JAF)                                                                                          -11-

§ 652(a)(8), a separate part of the Family Support Act that has almost no relation to the section of the statute that Plaintiffs seek to enforce. See §652(a)(8) (authorizing HHS to approve applications from <u>states</u> that seek to "enforce court orders for support against noncustodial parents") (emphasis added). Therefore, §§ 652(a)(8) and 660 cannot provide the jurisdiction that Plaintiffs seek. Nor does 42 U.S.C. § 667 contain any specific grants of jurisdiction. See <u>Blackston v. State of Ala.</u>, 30 F.3d 117, 119 (11th Cir. 1994) (affirming district court's conclusion that "42 U.S.C. § 667 (1988) did not create a right enforceable by the plaintiffs in federal court.").

**C.    42 U.S.C. § 1983**

Next, we consider whether we have subject-matter jurisdiction under 42 U.S.C. § 1983. Defendants argue that Plaintiffs have failed to establish subject-matter jurisdiction under § 1983 because they have failed to state a viable equal protection violation. (Docket No. 10 at 9-11.) Although Defendants characterize their motion as a motion to dismiss for lack of subject-matter jurisdiction,[7] the core of their argument is that Plaintiffs have failed to state a claim for relief. This type of argument is properly considered under Fed. R. 12(b)(6), not 12(b)(1). See Wright & Miller, 5B <u>Federal Practice and Procedure</u> § 1350 ("Nor, as many courts have noted, should a motion under Rule 12(b)(1) be confused with a motion

---

[7] As we noted above, Defendants' motion is titled "Motion To Show Cause And To Dismiss For Lack of Jurisdiction." (Docket No. 10.) Defendants characterize their motion as under Fed. R. 12(b)(1), not Fed. R. 12(b)(6). (Docket No. 10 at 2, 4.) The motion states that the court "does not have to delve into the merits of the case because plaintiffs have failed to demonstrate that the District Court has jurisdiction to grant the relief requested." (Docket No. 10 at 4.)

Civil No. 12-1837 (JAF) -12-

under Rule 12(b)(6) to dismiss for failure to state a claim for relief under federal or state law because the two are analytically different.").

Dismissal under Rule 12(b)(1) because of failure to state a federal constitutional claim is proper only if a court determines that the claim is "frivolous" or "so attenuated and unsubstantial as to be absolutely devoid of merit." Baker v. Carr, 82 S.Ct. 691, 702 (1962) (internal quotations and citations omitted). That the complaint is unsubstantial must be "very plain." Id. (internal quotations and citations omitted); see also Steel Co. v. Citizens for a Better Environment, 523 U.S. 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case.") (Scalia, J.).

Defendants do not argue that Plaintiffs' claim is "frivolous." Rather, Defendants present a straightforward argument that "an equal protection violation has not been configured." (Docket No. 10 at 9.) Defendants also argue that Plaintiffs' allegations of discriminatory intent are unsupported by facts. (Docket No. 10 at 11.) These arguments are more properly considered on a Rule 12(b)(6) motion. See Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1529 (1983) (affirming district court dismissal for lack of subject-matter jurisdiction but instructing that dismissal should have been for failure to state a constitutional claim under § 1983). Before Plaintiffs' equal protection claims are dismissed, Plaintiffs should be given clear notice of the legal challenge that Defendants are bringing.

We, therefore, **order** Plaintiffs to show cause why their equal protection claims should not be dismissed for failure to state a claim.

As their complaint stands now, Plaintiffs' equal protection claim barely survives a challenge under Rule 12(b)(1). In the context of a Rule 12(b)(6) challenge, "[t]o survive a motion to dismiss, an equal protection claim must outline facts sufficient to convey specific instances of unlawful discrimination." Coyne v. City of Somerville, 972 F.2d 440, 445 (1st Cir. 1992) (internal quotation marks and citations omitted). A viable equal protection claim must allege that "compared with others similarly situated, [Plaintiffs were] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Tapalian v. Tusino, 377 F.3d 1, 6 (1st Cir. 2004) (quoting Barrington Cove Ltd. P'ship v. Rhode Island, 246 F.3d 1, 7 (1st Cir. 2001)).

Plaintiffs' complaint, as it currently stands, would not pass muster under Rule 12(b)(6). The complaint contains no argument that Plaintiffs meet the similarly situated requirement. See Barrington, 246 F.3d at 7 (calling it "essential" that Plaintiffs allege, inter alia, that it and its comparators were similarly situated "in all relevant respects.") (emphasis in original) (citations omitted). Importantly, Plaintiffs' complaint also fails to allege any "gross abuse of power." See Tapalian, 377 F.3d at 6 (quoting Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000)) ("Normally, such a plaintiff must establish more than that the government official's actions were simply arbitrary or erroneous; instead, the plaintiff must establish that the defendant's actions constituted a 'gross abuse of power.'") Compared with

other cases in gross abuse of power, the allegations here are insufficient. See, e.g., Rubinovitz v. Rogato, 60 F.3d 906, 912 (1st Cir.1995) (noting that "gross abuse of power" may obtain where official harbors personal hostility toward plaintiff, and undertakes a "malicious orchestrated campaign causing substantial harm"); see also Village of Willowbrook v. Olech, 528 U.S. 562, 566 (2000) (Breyer, J., concurring) (noting that some otherwise "ordinary violations of city or state law" may become actionable under the equal protection clause provided the plaintiff proves "extra factor[s]," such as "vindictive action," "illegitimate animus" or "ill will"). Nor do we see any allegations that rise to the level of "fundamental procedural unfairness." See Pagan v. Calderon, 448 F.3d 16, 34-35 (1st Cir. 2006) (citations omitted).

Next, we consider whether 42 U.S.C. § 1983 confers jurisdiction by way of § 667. Neither party addressed this question in their motion to dismiss or opposition. (Docket Nos. 10, 11.) In light of our obligation to verify our own subject matter jurisdiction, we raise the question sua sponte. For the following reasons, we find that 42 U.S.C. § 1983 does not provide jurisdiction via § 667.

42 U.S.C. § 1983 "imposes liability on anyone who, acting under color of state law, deprives a person of any 'rights, privileges, or immunities secured by the Constitution and laws.'" Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56, 72-73 (1st Cir. 2005) (quoting 42 U.S.C. § 1983). "Asserting a violation of federal law, however, will not always be enough to establish a § 1983 cause of action—'[the] plaintiff must assert the violation of a federal right.'" Consejo de Salud de la Comunidad de la Playa de Ponce, Inc.

v. Gonzalez-Feliciano, 695 F.3d 83, 102 (1st Cir. 2012) (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997)).

In Blessing, the Supreme Court considered whether certain sections of Title IV-D of the Social Security Act conferred federal rights on individuals. There, the Court held that two statutory provisions requiring that states maintain "substantial compliance" and sufficient staffing, 42 U.S.C. §§ 609 and 654, did not create any privately enforceable federal rights. Blessing, 520 U.S. at 424-25. The Court also instructed that courts should break a complaint down into its constituent parts to determine whether they have alleged a specific violation of rights. Id. ("Only when the complaint is broken down into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria we have set forth for determining whether a federal statute creates rights.") (internal citations omitted); see also Consejo de Salud, 695 F.3d at 102 (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 283–84 (2002)) (stating that courts look to the provision of federal law that a plaintiff seeks to enforce to determine whether it creates such a right.)

It seems clear from reading the statute that § 667 does not confer a federal right on individuals. See Rio-Grande, 396 F.3d at 73 (asking whether statute contains rights-creating language and "whether the provision had an aggregate as opposed to an individualized focus") (citing Gonzaga, 536 U.S. at 287-90). Here, the statute does not contain any rights-creating language or focus on individuals. Rather, the statute simply imposes a requirement on states to periodically review their child support guidelines. See § 667. Therefore, no private right of action is available to Plaintiffs to enforce § 667 by way of § 1983. See also

Civil No. 12-1837 (JAF) -16-

Blackston, 30 F.3d at 119 (11th Cir. 1994) (affirming district court's conclusion that "42 U.S.C. § 667 (1988) did not create a right enforceable by the plaintiffs in federal court.").

**D.   Ex Parte Young**

Finally, we consider whether there is subject-matter jurisdiction under Ex Parte Young, 209 U.S. at 159-60. Defendants did not argue in their motion to dismiss whether there is jurisdiction under Ex Parte Young. (Docket No. 10.) Nor did Plaintiffs argue that Ex Parte Young confers jurisdiction, in either their complaint or in their opposition brief. (Docket Nos. 1, 11.) Because neither party has raised the issue, we will give the parties an opportunity to brief the question. We discuss the relevant authority here to guide the parties' briefing.

The Ex Parte Young doctrine allows federal courts, "notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law." Rosie D. Ex. Rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (quoting Lane v. First Nat'l Bank, 871 F.2d 166, 172 n. 5 (1st Cir. 1989)). To determine whether a suit is authorized under Ex Parte Young, courts need only "conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Com'n of Maryland, 535 U.S. 635 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)). Because the relief that Plaintiffs seek is prospective injunctive relief, their claim appears to fit within the

type of relief permitted by Ex Parte Young. See, e.g., Swift, 310 F.3d at 237 (authorizing plaintiffs' claim for prospective injunctive relief under Ex Parte Young).

In Swift, the First Circuit emphasized the "common understanding of Ex Parte Young and its historic role in administering the Social Security Act." Swift, 310 F.3d at 237. Moreover, other Circuit Courts of Appeals have concluded that Ex Parte Young confers jurisdiction on federal courts to enforce related portions of Title IV of the Social Security Act. See Mo. Child Care Ass'n v. Cross, 294 F.3d 1034, 1038 (8th Cir.2002) (concluding "that the [Child Welfare Act of 1980, Title IV-E of the Social Security Act] does not reflect any intent to limit Ex parte Young actions"); Joseph A. ex rel. Corrine Wolfe v. Ingram, 275 F.3d 1253, 1264 (10th Cir. 2002) (explaining that neither the Adoption and Safe Families Act nor the Adoption Assistance and Child Welfare Act "provide remedial schemes sufficient to foreclose Ex parte Young jurisdiction").

The First Circuit has laid out a set of principles for determining whether, in a given case, exceptions to Ex Parte Young jurisdiction may apply. See Swift, 310 F.3d at 237. The "clear guideposts" to answer this question are found in two Supreme Court cases, Seminole Tribe of Florida v. Florida, 517 U.S. 44, 74-75 (1996), and Verizon Maryland, Inc. v. Com'n of Maryland, 535 U.S. 602, 635 (2002). See Swift, 310 F.3d at 237. "In determining whether a statute's remedial provisions preclude prospective injunctive relief under the doctrine of Ex parte Young, the proper test involves an inquiry into Congress's intent." Swift, 310 F.3d at 237. More specifically, the First Circuit instructed courts to inquire whether a statute's "remedial scheme is sufficiently comprehensive to indicate that

Civil No. 12-1837 (JAF)                                                                                          -18-

Congress intended to foreclose such relief." Id. at 238.  In Swift, the court held that no exceptions to Ex Parte Young applied to suits for prospective relief under the federal Medicaid Act, 42 U.S.C. § 1396a.  Swift, 310 F.3d at 237-38.

To our knowledge, no court has addressed the specific question whether Ex Parte Young jurisdiction is available to enforce § 667.  Because this is a question of first impression in this circuit, and because neither party has briefed the question, we will grant the parties an opportunity to present arguments to the court.  Based on the test articulated by the First Circuit, it appears that Ex Parte Young jurisdiction is available to plaintiffs.  The Family Support Act of 1988 does not appear to contain any indications of Congressional intent to foreclose jurisdiction under Ex Parte Young.  In its "Statement of Purpose," the Senate Report discusses the "need for benefit improvement, program, innovation, and organizational renewal at every level in the Federal system." S. Rep. No. 100-377 (1988), at 14-15, reprinted in 1988 U.S.C.C.A.N. 2791-2792.  Secondary sources have also noted that the Family Support Act of 1988 was part of a series of laws that "increased federal involvement in child support laws."  See generally Larson, Ryan, Note, Modifying Modifications: The Future of Child Support is Electronic, 51 Fam. Ct. Rev. 149, 150-51 (Jan. 2013).  Nor does there appear to be a remedial scheme sufficiently detailed to fit within an exception to Ex Parte Young.  See Swift, 310 F.3d at 237-38 (collecting cases discussing exceptions to Ex Parte Young).  Nevertheless, we will give the parties an opportunity to present their arguments whether Ex Parte Young jurisdiction is proper here.

## IV.

## **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is hereby **GRANTED IN PART AND DENIED IN PART**. (Docket No. 10.) There is no subject-matter jurisdiction under the mandamus statute, 28 U.S.C. § 1361, or the Federal Family Support Act, § 667. The parties are **ORDERED** to simultaneously brief whether there is Ex Parte Young jurisdiction over this case. Also, Plaintiffs must show cause why their equal protection claims should not be dismissed for failure to state a claim under § 1983. The simultaneous briefs are due by **April 26, 2013**. The matter will then stand submitted for further decision.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 12th day of April, 2013.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        United States District Judge