UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARICARMEN DE LA CRUZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>IDALIA COLON-RONDON, Secretary of the Family Department of P.R.; ROSABELLE PADIN-BATISTA, Administrator of the Child Support Administration of P.R.,<br><br>    Defendants. | Civil No. 12-1837 (JAF) |

**OPINION AND ORDER**

On April 12, 2013, we entered an opinion and order, (Docket No. 57), granting in part and denying in part Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1).[1] (Docket No. 10.) We found that neither the writ of mandamus statute, nor § 1983, nor § 667 confers subject-matter jurisdiction over this case. (Docket No. 57.) We ordered the parties to brief the question whether Ex Parte Young, 209 U.S. 123, 159-60 (1908), confers jurisdiction. (Id.) We also ordered Plaintiffs to show cause why their equal protection claims should not be dismissed. (Id.) In our previous order, we provided clear instructions to Plaintiffs. To show that Ex Parte Young jurisdiction is proper in this case, Plaintiffs were ordered to provide arguments under the relevant First Circuit precedent, Rosie D. Ex. Rel.

---

[1] Plaintiffs opposed the motion to dismiss. (Docket No. 11.)

Civil No. 12-1837 (JAF) -2-

John D. v. Swift, 310 F.3d 230 (1st Cir. 2002). We also laid out the basic requirements for stating a viable equal protection claim.[2] (Docket No. 57.)

The parties have both filed briefs to comply with our order. (Docket Nos. 77; 79.) Plaintiffs have also filed an amended complaint. (Docket No. 83.) Despite our clear instructions to Plaintiffs, they have failed to show cause as to why this case should not be dismissed. It is well-established that "[w]hen a defendant moves to dismiss for lack of federal subject matter jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). Plaintiffs have failed to show that there is Ex Parte Young jurisdiction, or that they have a viable equal protection claim. We, therefore, dismiss Plaintiffs' case.

I.

**Discussion**

**A. Ex Parte Young**

The Ex Parte Young doctrine allows federal courts, "notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law." Swift, 310 F.3d at 234 (quoting Lane v. First Nat'l Bank, 871 F.2d 166, 172 n. 5 (1st Cir. 1989)). The First Circuit made clear in Swift that "[i]n determining whether a statute's remedial provisions preclude prospective injunctive relief under the doctrine of Ex parte Young, the proper test involves an inquiry into Congress's intent." See Swift, 310 F.3d at 237 (providing that Seminole Tribe of Florida v. Florida, 517 U.S. 44, 74-75 (1996), and Verizon Maryland,

---

[2] For a more detailed discussion of this case, see our earlier opinion and order of April 12, 2013. (Docket No. 57.) Here we discuss only the items that remained pending after our earlier opinion.

Inc. v. Com'n of Maryland, 535 U.S. 602, 635 (2002) are the "clear guideposts" for conducting this inquiry). More specifically, courts must inquire whether a statute's "remedial scheme is sufficiently comprehensive to indicate that Congress intended to foreclose such relief." Id. at 238.

After careful consideration, we now conclude that the Family Support Act of 1988, Pub. L. No. 100-485, 102 Stat. 245 (as codified at 42 U.S.C. § 667), contains sufficient indications of Congressional intent to foreclose Ex Parte Young jurisdiction. We begin our analysis by considering the statute that Plaintiffs seek to enforce. See Swift, 310 F.3d at 237 n.4 (instructing courts to look primarily at statutory text).

42 U.S.C. § 667 provides:

> Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts.

Id. The word "plan" refers to a plan under the Temporary Assistance to Needy Families Program ("TANF"), administered by the United States Department of Health and Human Services ("HHS") pursuant to Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–619. See Administracion del Sustento de Menores v. Dep't of Health & Human Serv., 588 F.3d 740, 742 (1st Cir. 2009). The TANF program provides block grants, also known as State Family Assistance Grants, to eligible states. Id. (citing 42 U.S.C. § 603(a)(1)). To be eligible for these block grants, states must operate child support enforcement programs— that is, programs designed to locate non-custodial parents, establish paternity, and obtain

Civil No. 12-1837 (JAF)                                                                                                    -4-

child and spousal support—in accordance with Title IV–D of the Social Security Act. Id. (citing 42 U.S.C. §§ 651– 669b; 42 U.S.C. § 602(a)(2)).  Puerto Rico participates in the TANF program.[3]  Id.

Title IV–D imposes performance standards and reporting requirements on states as a condition of funding. Id.  HHS enforces these standards and requirements.  Id.  HHS has promulgated a regulation reiterating the requirement that states review their child support guidelines every four years.  45 C.F.R. § 302.56.  In Puerto Rico, the Administrator of the Child Support Administration is responsible for reviewing these guidelines every four years, pursuant to Puerto Rico's Special Child Support Act, 8 L.P.R.A. §§ 501 et seq., and the Uniform Administrative Procedures Act, 3 L.P.R.A. §§ 2101 et seq.

This detailed scheme contains sufficient indications of Congress's intent to foreclose Ex Parte Young jurisdiction for suits by private parties.  Section 667 makes clear that a state's compliance with the statute is a condition for approval of its "plan."  This section of the statute does not make any mention of private enforcement.  Id.  Section 652(a) specifically designates HHS as the entity responsible for enforcing states' compliance with the TANF program.  The scheme makes fairly clear that a state's failure to comply with the statute is remedied by HHS enforcement rather than private party suits.

The legislative history of the Family Support Act of 1988 reinforces this conclusion. While it increased the federal role in child support enforcement, Congress remained "very

---

[3] Puerto Rico is treated as a state for purposes of the TANF program, 42 U.S.C. § 619(5), and Title IV–D of the Social Security Act, id. § 1301(a)(1).

Civil No. 12-1837 (JAF)                                                                                        -5-

sensitive to [the] major State role as it developed this legislation." S. Rep. No. 100-377 (1988), at 13-14, reprinted in 1988 U.S.C.C.A.N. 2791-2792. In view of the historic, primary role of states in administering welfare programs, Congress "continue[d] this long-standing approach of a Federally supported and guided, but State-administered and partially State-financed program." Id. Such deferential language reinforces our sense that Congress did not wish for federal courts to insert themselves in these state administrative functions. See id.

Moreover, narrow restrictions apply to the other sections of Title IV-D that do authorize suits in federal court. Section 660 provides that:

> The district courts of the United States shall have jurisdiction, without regard to any amount in controversy, to hear and determine any civil action certified by the Secretary of Health and Human Services under section 652(a)(8) of this title. A civil action under this section may be brought in any judicial district in which the claim arose, the plaintiff resides, or the defendant resides.

Id. Section 652(a)(8), in turn, makes clear that states, not private parties, are the only entities which can apply to HHS for authorization to bring suit in federal court, and only upon narrow conditions. See id. (requiring that HHS "receive applications from States for permission to utilize the courts of the United States to enforce court orders for support against noncustodial parents."). Section 652(a)(8) provides that applications may be approved only "upon a finding that (A) another State has not undertaken to enforce the court order of the originating State against the noncustodial parent within a reasonable time, and

Civil No. 12-1837 (JAF)                                                                                         -6-

(B) that utilization of the Federal courts is the only reasonable method of enforcing such order." Id.

In drafting Title IV-D, therefore, Congress created a detailed remedial scheme that carefully restricts access to federal courts. We will not override Congress's will by exercising Ex Parte Young jurisdiction in this case. Appellate courts have similarly rejected attempts by private individuals to bring suit under §§ 667 and 660. See Blackston v. State of Alabama, 30 F.3d 117, 119 (11th Cir. 1994) (affirming district court's conclusion that "42 U.S.C. § 667 (1988) did not create a right enforceable by the plaintiffs in federal court"); see also Hexamer v. Foreness, 981 F.2d 821 (5th Cir. 1993) (finding no jurisdiction under § 660 unless the Secretary has provided certification.).

It is important to note that Defendants do not deny having a responsibility to comply with § 667. Puerto Rico has already complied with the first sentence of § 667, which requires states to "establish guidelines for child support award amounts." § 667. Defendants, who took office following the elections of 2012, also acknowledge their obligation to ensure that the guidelines are reviewed every four years. (Docket No. 77 at 14.) In fact, as Plaintiffs acknowledge, Defendants have already stated publicly that they have begun the process of review. (Docket Nos. 52; 52-1; 77.) The Administrator of the Child Support Administration, Rosabelle Padín-Batista, has stated that before her agency finalizes its review of the guidelines, her agency will likely assess all of the economic studies performed by the prior administration, and hold public hearings.[4] (Docket No. 52.)

---

[4] Yamilet Millán Rodríguez, Para Largo Nuevas Tablas de ASUME, EL VOCERO, March 20, 2013, at 6. (See Translation at Docket No. 55-1.)

Civil No. 12-1837 (JAF)                                                                                                   -7-

Plaintiffs respond that Defendants' plans are unnecessary and inject needless delay into the proceedings. (Id.) Plaintiffs' contention may or may not be correct, as a matter of prudential judgment. But these kinds of disputes—about how quickly a state agency should implement its own regulations, or which economic models are best suited for the task at hand—are not the sort of questions that federal courts are designed to arbiter. See Rizzo v. Goode, 423 U.S. 362, 378 ("Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'") (internal citations omitted). For these reasons, we find that there is no Ex Parte Young jurisdiction over Plaintiffs' claim.

**B.     Equal Protection**

In their motion to dismiss, Defendants argued that Plaintiffs failed to establish subject-matter jurisdiction under § 1983 because they failed to state a viable equal protection violation. (Docket No. 10 at 9-11.) Although Defendants characterized their motion as a motion to dismiss for lack of subject-matter jurisdiction,[5] we found the core of their argument to be that Plaintiffs failed to state any claim for relief and, thus, better considered under Fed. R. 12(b)(6), not 12(b)(1). See Wright & Miller, 5B Federal Practice and Procedure § 1350 ("Nor, as many courts have noted, should a motion under Rule 12(b)(1) be confused with a motion under Rule 12(b)(6) to dismiss for failure to state a claim for relief under federal or state law because the two are analytically different."). Noting the grave deficiencies in Plaintiffs' claim, we ordered Plaintiffs to show cause as to

---

[5] Defendants' motion was titled "Motion To Show Cause And To Dismiss For Lack of Jurisdiction." (Docket No. 10.)

Civil No. 12-1837 (JAF)                                                                                                    -8-

why their equal protection claim should not be dismissed for failure to state a claim. (Docket No. 57.)

Following our order to show cause, (Docket No. 57), Plaintiffs then filed a brief and an amended complaint. (Docket Nos. 79; 83.) Plaintiffs also filed an opposition after Defendants first argued in their motion to dismiss that Plaintiffs' equal protection claims were invalid. (Docket Nos. 10; 11.) Plaintiffs have thus had several opportunities to respond to Defendants' clear challenge. Still, none of Plaintiffs' filings comes close to stating a viable equal protection claim. See Coyne v. City of Somerville, 972 F.2d 440, 445 (1st Cir. 1992) ("To survive a motion to dismiss, an equal protection claim must outline facts sufficient to convey specific instances of unlawful discrimination.") (internal quotation marks and citations omitted). A viable equal protection claim must allege that "compared with others similarly situated, [Plaintiffs were] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Tapalian v. Tusino, 377 F.3d 1, 6 (1st Cir. 2004) (quoting Barrington Cove Ltd. P'ship v. Rhode Island, 246 F.3d 1, 7 (1st Cir. 2001)).

Plaintiffs' amended complaint does not meet these basic requirements. It does not mention any impermissible discrimination. See id. Nor does Plaintiffs' amended complaint show that Plaintiffs meet the similarly-situated requirement. See Barrington, 246 F.3d at 7 (calling it "essential" that Plaintiffs allege, inter alia, that it and its comparators were similarly situated "in all relevant respects.") (emphasis in original) (citations omitted).

Civil No. 12-1837 (JAF) -9-

Plaintiffs' amended complaint also fails to allege any "gross abuse of power." See Tapalian, 377 F.3d at 6 ("Normally, such a plaintiff must establish more than that the government official's actions were simply arbitrary or erroneous; instead, the plaintiff must establish that the defendant's actions constituted a 'gross abuse of power.'") (quoting Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000)). Compared with other cases of gross abuse of power, Plaintiffs' allegations are clearly insufficient. See, e.g., Rubinovitz v. Rogato, 60 F.3d 906, 912 (1st Cir. 1995) (discussing a "malicious orchestrated campaign causing substantial harm"). Nor do we see any allegations that rise to the level of "fundamental procedural unfairness." See Pagan v. Calderon, 448 F.3d 16, 34-35 (1st Cir. 2006) (citations omitted). Therefore, we find that Plaintiffs have failed to state a viable equal protection claim.

## II.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is hereby **GRANTED**. (Docket No. 10.) Following our order, (Docket No. 57), Plaintiffs have failed to show that there is subject-matter jurisdiction under Ex Parte Young, or that they have a viable equal protection claim. Plaintiffs' complaint is hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 8th day of July, 2013.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        United States District Judge